THOMPSON (ENGLAND v.). See Case No. 4,487.

---

## Case No. 13,954.

### THOMPSON et al. v. FAUSSAT.

[1 Pet. C. C. 182.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1815.

SEAMEN—WAGES—RECEIPT—WHEN CONCLUSIVE—CAPTURE ON HOMEWARD VOYAGE—TO WHAT TIME WAGES DUE—NEW CONTRACT.

1. The appellants filed their libel for wages, on a voyage from Philadelphia to a port in France; and for half the time the vessel lay at the port, at which the homeward cargo was taken on board. The vessel landed her cargo at her destined port, St. Jean de Luz, proceeded to Bayonne, remained there six months; and then went to La Teste, where she took on board a cargo, sailed on her homeward voyage, was captured by the British, carried into England, and condemned as a prize. The libellants returned to Philadelphia, after having been detained for some time, as prisoners of war. The respondents on being applied to, offered to pay only half wages, from the time the vessel arrived at St. Jean de Luz; and stated, that if they did not think proper to accept of this offer, they might take advice, and determine on the proposition. The libellants afterwards accepted their wages, according to the terms offered, and gave acquittances in full. They claimed in their libel, full wages to La Teste, and half wages during the time of her stay there.

2. A receipt in full is only prima facie evidence of what it purports; and if clearly proved to have been obtained by fraud, mistake, or ignorance of the rights of the party, it will be examined into and corrected in a court of law, as well as in a court of equity; but if such evidence is not given, the presumption in favour of the validity of this instrument will prevail.

[Cited in brief in Lawrence v. Schuylkill Nav. Co.. Case No. 8,143; The Topsy, 44 Fed. 632.]

[Cited in Girard v. St. Louis Car-Wheel Co. (Mo. Sup.) 27 S. W. 650; Russell v. First Presbyterian Church, 65 Pa. 15.]

3. If the legal rights of a party are doubtful, honestly contested, and opportunity given him to satisfy himself in relation to them; a receipt given by him for less than he was in strictness entitled to, will not be set aside.

4. When a vessel is lost on her homeward voyage, full wages are due to the seamen up to the time of her arrival at the last port of delivery, of the outward cargo; and half wages from that time until her departure from the last port at which the return cargo was taken on board; the time of her going from port to port to obtain the cargo, being considered the same as if she had remained at her port of delivery, and taken a full cargo there.

[Cited in The Two Catherines, Case No. 14,-288; Bronde v. Haven, Id. 1,924; Pitman v. Hooper, Id. 11,186; The Niphon's Crew, Id. 10,277.]

[Cited in Gookin v. New England Mut. Marine Ins. Co., 12 Gray, 516. Cited in Washington Ins. Co. v. White, 103 Mass. 240.]

[1] [Reported by Richard Peters, Jr., Esq.]

5. Retaining seamen on board, by direction of the owner, after the determination of the voyage for which they shipped, amounts to a new contract for the return voyage, upon the same terms as the outward voyage.

This was an appeal from the decree of the district court, upon a libel filed in that court, by the appellants, for their wages, as seamen on board the Squirrel, belonging to the appellee, on a voyage from Philadelphia, to a port in France. The facts of the case were; that this vessel arrived at St. Jean de Luz, on the 14th day of March, 1813, and after discharging her cargo at that port, on the 26th of the same month, proceeded to Bayonne. A return cargo was provided for her at Bordeaux, by the consignees, when instructions were received by the master from the consignees, to remain with the vessel in France, until September, and in the mean time to discharge part of the crew. A part of the crew was accordingly discharged, and a part retained, amongst whom were the libellants. On the 21st of September, 1813, the vessel sailed from Bayonne and arrived next day at the port of La Teste; where the cargo, for the return voyage, was received and laded on board. On the 12th of December, in the same year, she sailed from La Teste on her homeward voyage; and in two days afterwards, she was captured by a British frigate, carried into England and condemned as a lawful prize. The libellants having remained on board of this vessel, from the time of her departure from Philadelphia, to the period of her capture, and carrying in for adjudication; demanded their full wages, from the time the vessel sailed from Philadelphia, until her arrival at La Teste. that being the last port of lading and departure; and for half the time, during which she remained at the said port. It was proved in the cause, that when the libellants called upon the respondents to demand their wages, they were informed by the respondents, that they had taken legal advice, and that the libellants were entitled to only half wages after the brig arrived at St. Jean de Luz; that they had been informed that other vessels had settled on the same terms; and that they were ready to settle with them upon the same principle. They further stated to the libellants, that if they did not think proper to settle upon this principle, they could take advice and call again in the afternoon. They did call accordingly, and received the wages which the respondents had offered to pay, for which they severally gave receipts in full of all demands, against the brig Squirrel, her owner and officers. The district court dismissed the libel.

It was contended by Messrs. Coxe & Dillingham, for the appellants, that an acquittance is only prima facie evidence of the payment of the sum mentioned in it: and though given in full of all demands, it may be inquired into: and if it was given under circumstances of fraud, imposition or mis-

take, the parties are not bound by it; that the rule applies with peculiar force in cases of acquittances given by seamen. 1 Eq. Cas. Abr. 170, note; 2 Term R. 366; 5 Ves. 87; 5 East, 232; 1 Johns. Cas. 145; 2 Johns. Cas. 448; 5 Johns. 68; 8 Johns. 389; Thorne v. White [Case No. 13,989]; Jackson v. White [Id. 7,151]; Whiteman v. The Neptune [Id. 17,569]. They insisted there was ground for charging the appellees with imposition; as they have offered no evidence to show they had received the advice they pretended they had, or that settlements in similar cases and upon the same principle, had been made by the seamen of other vessels.

Secondly, they contended, that there is a clear mistake; since the rule in such cases being, that the seamen are entitled to full wages up to the time of the arrival of the vessel, at the last port of her lading or departure, which La Teste was, and to half wages, during her stay there. Beaw. Lex Merc. 109; 12 Mod. 408; 5 Com. Dig. 115; 2 Vern. 727; 4 Bac. Abr. 617; Relf v. The Maria [Case No. 11,692]; Walton v. The Neptune [Id. 17,135]; Giles v. The Cynthia [Id. 5,424]; Thompson v. The Philadelphia [Id. 13,973], Johnson v. Sims [Id. 7,413]; Cranmer v. Gernon [Id. 3,359].

Mr. Phillips, for the appellee, admitted that a receipt is not conclusive; but he insisted, that where there is no fraud, and the party giving it, had a full opportunity to take advice, and he afterwards consents to receive a sum less than he was entitled to; he is bound by it. Secondly, he contested the rule laid down on the other side, and insisted that full wages were due only to the port of discharge, and half wages for the residue of the time, that this vessel was detained.

Coxe & Dillingham, for appellants.
Mr. Phillips, for appellee.

WASHINGTON, Circuit Justice. The principle contended for by the appellants' counsel, that a receipt in full of all demands, is not conclusive, against the giver of it, is, as a general principle, unquestionably correct. It is so settled in the English and American courts. Like a settled account, it is only prima facie evidence of what it purports to be, upon the face of it; and upon satisfactory proof being made, that it was obtained by fraud, or was given under a mistake, either of facts, or under an ignorance of the legal rights of the party who gave it; it may be inquired into and corrected in a court of law, as well as in a court of equity. When this is made out by evidence, it then appears, that beyond the sum actually paid, it was given without consideration. But this want of consideration, ought to be made clearly to appear by the party who attempts to impeach the validity of the instrument. If this is not done, the presumption in favour of the written acknowledgment of the party, must prevail. An agreement for in-stance, made for the purpose of settling family differences, will not be set aside even in equity, though it were founded on mistake. In like manner, I conceive, if the legal rights of the party who gives the receipt, be doubtful, and are honestly contested by the other side; and time and opportunity are afforded him to satisfy himself upon the matter in dispute, and he finally agrees to compromise, and to accept less that he might in strictness be entitled to; the court will hold him bound.

As to the point of law, arising in this case, in relation to the wages, which these seamen had a right to claim; it appears to be quite unsettled. I have met with no case, which precisely resembles it, in any book of reports; nor with any principle in the ordinances, or usages of other nations, which strictly applies to it. In the cases cited from 12 Mod. 409, and Ld. Raym. 739, it is laid down as a general principle; that if the vessel be lost on her return voyage, the seamen are entitled only to full wages to the last port of delivery; and to half wages, for the time she was in such port. In the case of Giles v. The Cynthia [Case No. 5,424], the same rule was laid down. In the case of Cranmer v. Gernon [Id. 3,359], the same decision was made; the Isle of Bourbon being considered as the last port of delivery. It is true, that in this latter case, the judge states, that he had decided; that when a cargo is purchased, at several neighboring ports, and the vessel proceeds to each of them to receive it, the last port of lading and departure, is the one to which full wages should be paid. But I think it fair to apply this doctrine, thus generally stated, to the particular case the judge was deciding, which will make it consistent with his other reported decisions, and with the cases before mentioned. 12 Mod. 409, and Ld. Raym. 739. What proves the propriety of thus qualifying the dictum of the learned judge is, that he immediately observes, that it is immaterial, whether the ship lay at the port of her original destination, while her cargo was collecting, and brought in lighters, or goes to the port where it was purchased. Now if it be immaterial, and if remaining at the port of her original destination, the seamen would have been entitled to no more than full wages to that port, and half wages, during her continuance there; they would be entitled to no more, if the ship had gone to other ports, to take in her cargo there, instead of waiting to have it sent to her.

My own opinion, upon this new, and somewhat difficult case is; that whenever the vessel is lost on her return voyage, her arrival at the last port of delivery of the outward cargo, or at the last port of destination, if there be no cargo; fixes the time, to which full wages are to be allowed; and that one half time of her stay there should be added to the outward, and the other half

to the homeward voyage; and to be considered respectively, as parts thereof. If the vessel leaves her port of destination or unlading, for the purpose of receiving a return cargo; she is at such ports, to be considered, either as on her return voyage, or as being in the same situation, as if she had remained at her last port of unlading, there to receive her cargo. If the former, then the whole of the wages, from the time she left her port of unlading, including half the time she lay there, would be lost, in consequence of the subsequent capture; if the latter, the seamen would be entitled to half wages only, during the whole time the ship lay at the port of delivery, and the port of lading and departure. But upon no principle, that I can distinctly comprehend, can the port of lading and departure, be considered as the port of delivery, or, in other words, the termination of the outward voyage; unless there be something particular in the contract made with the seamen. In this case, the contract was for a port in France. After the cargo was delivered at St. Jean de Luz, it terminated; and the seamen were at liberty to leave the vessel. But the retaining of them, in consequence of the directions of the owners, amounted to a new contract for the return voyage; upon the same terms, as had been agreed upon, for the outward voyage, as it does not appear, that any new contract was expressly made with them. The going to Bayonne, for the purpose of taking in a return cargo, which was to be sent thither from Bordeaux; and the subsequent departure from Bayonne, and arrival at La Teste, where the cargo was actually taken on board; were either parts of the return voyage, or those ports are to be considered, in relation to St. Jean de Luz, as one port. In the former case, the appellants have received more than they were entitled to, and in the latter, precisely what they were entitled to.

I am therefore of opinion, that the claims of the appellants, were settled on fair principles; and that the decree of the district court, ought to be affirmed with costs. Decree affirmed.